UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Franklin Wallace, ) | Civil Action No.: 4:05-673-RBH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **O R D E R** |
| Crown Cork and Seal Pension Plan, ) | |
| Crown Cork and Seal Insurance Plan, ) | |
| and Crown Cork and Seal Company, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court are plaintiff's [50] Motion for Attorney's Fees and [54] Motion for Summary Judgment.

This action arises under ERISA, 29 U.S.C. § 1001, et seq. Plaintiff filed the action in state court in February of 2005 seeking disability pension and life insurance disability premium waiver benefits allegedly due him under the defendant plans. The defendants removed the case to this Court on March 3, 2005. The case was initially assigned to Judge Terry L. Wooten. The case was reassigned to the undersigned on June 20, 2005.

On December 6, 2005, the parties filed a motion for a stay on the basis that "defendants have advised the plaintiff that the Disability Pension Plan relies on the conclusions of the Social Security Administration when determining any award to (sic) of benefits and have further advised the plaintiff that the defendants are highly confident that if the Social Security Administration determines that the plaintiff meets the Social Security Administration's required disability criteria, then the defendant would award the plaintiff disability pension benefits." This Court granted the motion to stay the matter

1

pending a determination by the SSA of the plaintiff's disability on December 6, 2005. On September 26, 2006, plaintiff filed a motion to lift the stay on the basis that on May 16, 2006 the Social Security Administration found the plaintiff to be totally disabled; that plaintiff provided the defendant additional medical information and renewed his claim; and that the defendants had still not made a decision on the claim. Defendants filed a Return to the Motion on October 13, 2006 alleging that "in accord with the terms and conditions of its benefit plans, defendant could not conclude that plaintiff was totally and permanently disabled without SSA's approval of plaintiff's claim" and that the SSA decision became final on July 15, 2006, after the 60-day review period elapsed. Defendant further alleged that plaintiff submitted a revised application for benefits on August 28, 2006, containing additional medical reports and the SSA Notice of Decision; that the benefit plans committee meets monthly; that the next scheduled meeting was in September; that the committee awarded the plaintiff benefits at its September meeting, effective October of 2006; and that the case was moot.

Plaintiff filed a Reply to the Response on October 24, 2006, alleging that the benefits had not yet begun and that plaintiff sought benefits retroactive to his initial application of December 5, 2002. Plaintiff further alleged that he had a claim for attorney's fees.

By Order dated April 16, 2007, the Court granted the motion to lift the stay and required the parties to file a status report with the Court indicating the status of any settlement; whether any further relief was sought; whether they would be filing additional motions; and what matters still needed resolution by the Court.

Defendants filed a status report indicating that plaintiff in fact began receiving benefits in February of 2007, retroactively applied to the date of his initial application. Defendants also stated that they do not provide life insurance benefits based upon disability. Plaintiff filed a status report which indicated that defendants began paying disability pension benefits in February of 2007 but that the

defendant had failed to address plaintiff's claim for attorney's fees and costs. On August 13, 2007, plaintiff filed the motions for attorney's fees and for summary judgment which are presently before the Court. The motion for summary judgment only concerns the plaintiff's claim for disability pension benefits and attorney's fees. *See* [64-2] Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 3.

### **Background Facts**

Plaintiff alleges that he submitted his first claim for benefits with the Plan on December 5, 2002. Defendant contends that the plaintiff applied on May 26, 2004. The parties agree that plaintiff's initial application was denied on July 12, 2004. Defendant indicates that the reason for the denial was that the SSA had denied Plaintiff's initial application and the documentation the plaintiff had provided did not show that he was totally and/or permanently disabled. Plaintiff retained counsel who filed an appeal within the Plan on September 10, 2004 and requested copies of all Summary Plan Description and the Benefit Plans in which the plaintiff was enrolled. Plaintiff submitted additional medicals on October 22, 2004. After 120 days had passed, plaintiff through counsel submitted a status request on January 18, 2005 to the plan regarding the appeal. Defendants then denied the claim on January 25, 2005. In the letter denying the claim, plaintiff was advised that he had 90 days to commence legal action and that "failure to do so within the prescribed time will forever bar the commencement of such action." *See* Summary Plan Description [72-3].

On February 4, 2005, plaintiff filed this action. As described above, the case was stayed pending a decision by the SSA at the request of the parties. After the defendants received the decision, the plaintiff submitted a new application in August of 2006 at the request of the defendants. On December 5, 2006, the Plan sent the plaintiff election forms for the disability retirement. Defendants contend that delay in receiving benefits was caused by the plaintiff's failure to timely return this form

3

but do not indicate the date on which the form was received by the Plan. The defendants did not begin paying benefits until February of 2007.

## PROVISIONS OF THE PLAN

Article III of the Crown Cork & Seal Company, Inc. Pension Plan provides in section 3.4 as follows:

> 3.4.1 <u>Determination of Total and Permanent Disability</u>. To be eligible for a disability retirement benefit, a Participant must first submit an application to the Corporate Director of Benefit Plans Compliance for a determination that he has incurred a Total and Permanent Disability in accordance with the terms of the Rider applicable to him. ***The application for determination that a participant has incurred a Total and Permanent Disability must be submitted after the Participant has been absent from work for five consecutive months due to the disability but before his Severance from Service Date***. **A letter from the Social Security Administration awarding or denying Social Security disability benefits, or, to the extent such a letter is unavailable, evidence that an application for disability benefits has been filed with the Social Security Administration, must also be submitted to the Corporate Director of Benefit Plans Compliance.** (Emphasis and italics added)
>
> 3.4.2 <u>Application for Disability Retirement Benefit</u>. In order to receive a disability retirement benefit, a Participant who has been determined to have incurred a Total and Permanent Disability must submit a properly completed disability pension application to the Committee in accordance with pension application procedures described in Article VI, no earlier than the date occurring five consecutive months after the date such Total and Permanent Disability initially began and no later than his Severance from Service Date.

Article IX of the Plan provides in Paragraph 9.11.6.2, regarding the disability benefit appeal procedure, that the Committee's review shall "provide for the identification of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the initial adverse determination, without regard to whether the advice was relied upon in making the initial determination." It also provides for consultation with a health care professional "who was not consulted in connection with the initial adverse determination. . ."

Rider Number One to the Plan provides a definition of "Total and Permanent Disability" as "the

4

total and permanent incapacity of an Employee which arises prior to the Employee's Severance from Service Date, while actively employed by the Employer, after he has been credited with 15 years of Service for vesting purposes, which, as determined by the Committee in a uniformly applied manner renders the Employee incapable of engaging in any occupation or employment for remuneration or profit for a period expected to continue for life. . ."

## LEGAL ANALYSIS

*1. Motion for Summary Judgment*

Defendants contend that the case is moot as a matter of law, since pension disability benefits are now being paid. Plaintiff argues the case is not moot since the defendant has never admitted in the lawsuit that plaintiff is entitled to benefits and asserts that no settlement agreement has actually been entered into between the parties.

The Constitution limits this Court's jurisdiction to the adjudication of actual cases and controversies. *See* U.S. Const. art. III, § 2; *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action. *See Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). When there is no longer a case or controversy in the constitutional sense, an Article III court is without jurisdiction to adjudicate. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92 (4th Cir. 1988); *See also*, *Boyadjian v. CIGNA Companies*, 973 F.Supp. 500 (D.N.J. 1997)(former employee's claim for pension benefits moot where he had already obtained the benefits).

The Court finds that the case has become moot by the payment of benefits. The case is

5

accordingly dismissed without prejudice. Should the defendants discontinue payment of benefits at some point in the future, then the plaintiff could then institute litigation, and the defendant could be faced with both estoppel issues and attorney's fees issues regarding any future matters.

*2. Motion for Attorney's Fees*

Even though the Court has found the case to be moot, attorney's fees may still be awarded if appropriate. *See Dahlem v. Bod fo Ed. Of Denver Pub. Sch.*, 901 F.2d 1508, 1511 (10th Cir. 1990); *Nash v. Chandler*, 859 F.2d 1210 (5th Cir. 1988); *Owen v. Regence Bluecross Blueshield of Utah*, 388 F.Supp. 2d 1318 (D. Utah 2005).

ERISA provides that in an action brought by a "participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In the Fourth Circuit, only a prevailing party is entitled to consideration for attorneys' fees in an ERISA action." *Martin v. Blue Cross & Blue Shield of Virginia, Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997). Before a party is determined to "prevail", he must "receive at least some relief on the merits of his claim." *Griggs v. E.I.Dupont de Nemours & Co.*, 385 F.3d 440, 454 (4th Cir. 2004), *citing Buckhannon Bd. & Care Home, Inc. V. West Va. Dep't of Health & Human Resources*, 532 U.S. 598, 603 (2001); *S-1 and S-2 v. State Bd. of Ed. of N.C.*, 21 F.3d 49, 51 (4th Cir. 1994)(en banc)("A person may not be a 'prevailing party' plaintiff. . . except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought. . ."; *[See also Farrar v. Hobby*, 506 U.S. 103, 111 (1992), holding that a prevailing party under 42 U.S.C. § 1988 is one who obtains an enforceable judgment or "comparable relief through a consent decree or settlement". A party is "prevailing" if he achieves some of the benefits sought by him in the lawsuit. *Id*. *See also*, *Long v. Houston Lighting & Power Co.*, 902 F.Supp.130 (D.Tx. 1995)( employee found to be prevailing party where he brought ERISA action against insurance company and his benefits were

6

reinstated after he brought suit)].

In the case at bar, the Court finds that the plaintiff was a prevailing party under ERISA. He succeeded in being awarded benefits due to the efforts by his attorney through litigation. Even with the attorney's assistance, there were numerous delays before the award occurred. Here, the plaintiff has not received a formal consent decree, enforceable judgment, or formal settlement. However, he has received what he sought , his disability benefits and is currently receiving monthly disability benefits. To that extent, he has received a settlement, though not in the usual form. The only issue which remains is whether to award attorney's fees and in what amount.

The Fourth Circuit holds that a party who prevails does not, by prevailing alone, establish a presumption of entitlement to an award of fees." *Custer v Pan American Life Insurance Company*, 12 F.3d 410 at 422 (4th Cir. 1993)*, citing Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1028-29 (4th Cir. 1993) "Unlike some federal statutes, ERISA establishes no presumption for the award of fees to a 'prevailing insured or beneficiary.'" *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006) (*citing Quesinberry*, 987 F.2d at 1029).

The Fourth Circuit "adopted a five factor test to guide the district court's exercise of discretion in awarding attorneys' fees under ERISA. The five factors [include]: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Quesinberry,* 987 F.2d at 1029 (*citing Reinking v. Philadelphia American Life Insurance Co.,* 910 F.2d 1210, 1217-18 (4th Cir.1990).

"This five factor approach is not a rigid test, but rather provides general guidelines for the

district court in determining whether to grant a request for attorneys' fees. (citation omitted) Requiring district courts to justify the award or denial of attorneys' fees in terms of these five factors allows us some basis for reviewing whether the action was an abuse of discretion. (citation omitted) The proper approach to these factors was described in [*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)]: 'No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g) [1132(g)] . . ." *Id*.

In the case at bar, the Court finds that an analysis of the five factors reveals that an award of attorney's fees is appropriate. As to the first factor, the degree of the defendant's culpability, although it is not enough to show the defendant acted negligently or simply erred[1], the Court notes that the defendant has insisted that the fact the plaintiff had not completed his SSA claim meant that he had not exhausted his administrative remedies. To the contrary, the Plan clearly does not require a claimant to wait until he completed his SSA claim to file a claim with the Plan, and the Plan contains provisions for making determinations regarding disability.[2] The Plan does require that a copy of the Social Security application, or decision if available, be attached to the claim. It is interesting to note that the Plan has time limits under which an individual must file a claim and that, if the plaintiff had waited to file, then the Plan might well have found the claim to be time-barred. In addition, it appears that the defendants dragged their feet in responding to the claim throughout the process.

As to the second factor, it appears that the defendant would be able to pay an award of attorney

---

[1] *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995).

[2] The January 25, 2005 letter from the Benefit Plans Committee which denied plaintiff's appeal within the Plan states: "In considering your appeal, the Committee conducted a fresh review of your case. As provided under the Plan, the Committee consulted with a health care professional as to the nature and severity of your condition."

8

fees.

As to the third factor, an award of attorney fees would not appear to deter other persons from taking the same actions as the defendants took in the case at bar.  As to the fourth factor, the plaintiff was not seeking to benefit other participants in the Plan or to resolve a significant legal question regarding the plan.  However, perhaps the defendants would be deterred from taking the same positions regarding the plan in the future. Finally, as to the merits of the parties' positions, as the Court as already noted, the Court believes that the defendant could certainly have proceeded in a much more timely manner and has taken positions that were meritless.  Therefore, the Court finds that the plaintiff is a prevailing party and that he is entitled to an award of attorney's fees.

Local Rule 54.02(A) requires petitions for attorney's fees to comply with the requirements of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) and shall state any exceptional circumstances and the ability of the party to pay the fee.  In determining reasonableness, the Court shall analyze the twelve factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).  Those twelve factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

In the case at bar, the defendants have not challenged the reasonableness of the amount claimed by the plaintiff.  The requested attorney's fees are calculated at $200 per hour for a total fee of

$3762.50 and costs of $233.63, which after considering the above factors, the Court finds to be reasonable.

## CONCLUSION

The Court denies [54] plaintiff's Motion for Summary Judgment on the basis that the case is moot. The case is hereby dismissed without prejudice since it has become moot. The Court grants [50] plaintiff's Motion for Attorney's Fees and orders the defendants to pay the plaintiff's counsel the sum of $3762.50 in attorney's fees in addition to $233.63 in costs.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Court Judge

October 26, 2007  
Florence, South Carolina